# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

ANDRE FANT                                                                                        PLAINTIFF

v.                                                          CIVIL ACTION NO. 5:18-CV-P71-TBR

KENTUCKY STATE PENITENTIARY et al.                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Andre Fant, *pro se*, filed this civil-rights action pursuant to 42 U.S.C. § 1983 against various government officials. This case is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, this case will be dismissed in part and allowed to continue in part.

## I. STATEMENT OF CLAIMS

Plaintiff, an inmate at the Kentucky State Penitentiary (KSP), names as Defendants KSP and multiple KSP employees in their individual and official capacities, as follows: Sgt. Brendan Inglish; Correctional Officer Nathaniel Deboe; Correctional Officer Michael Alexander; Correctional Officer Charles Conner; Correctional Officer Perry Sanders; Classification Training Officer Michael Massey; Correctional Officer Quinton Harris; Warden Randy White; Lt. Jesse Combs; Major Will Thomas; Internal Affairs Officer James Beavers; Deputy Warden Steve Ford; Deputy Warden Skylar Grief; Captain Frederick Rodgers; Correctional Officer Brian Neely; Correctional Officer George Pillion; Correctional Unit Administrator Troy Belt; Correctional Unit Administrator Josh Patton; Correctional Treatment Officer Micah Melton; and Sgt. Gage Rodriguez. He alleges that on June 29, 2017, he was accosted by an officer and "resisted apprehension." He states that he was then taken to the segregation unit, stripped out,

and placed in a restraint chair, during which time he complied, was "calm, and had "zero incidents." He states that while he was in the chair, several comments were made about him, such as "'n***** wanna assault staff'" and "wouldn't be the first one we killed.'" Plaintiff alleges that he "knew something was going to take place so I made sure I didn't move in any way that would justify them doing anything harmful to me." However, he alleges that he was "shocked for no reason" and that the "shockings were so severe that I bit through my tongue [and] medical attention was refused." Plaintiff alleges that the use of excess force was malicious, sadistic, and not justified by legitimate law enforcement need.

Plaintiff alleges that when he asked Defendant Harris to fix the spit mask on his face Defendant Harris instead hit him "open-handed," then fixed the mask, but then started choking him with it. He further states that he "was stripped out in nothing but boxers and a mattress for approximately nine . . . days."

The complaint next refers to a different incident in which Defendant Pillion tossed Plaintiff's sack lunch in the toilet. Plaintiff states that he had complained about his tongue being split due to being shocked so many times. He states that his next sack lunch had been pepper sprayed and that Defendant Inglish gave him a sack lunch containing only an apple that had already been bitten and no drinking water. He states that he wrote Warden White about the incidents of abuse.

Plaintiff further alleges that Defendant Deboe "told me prior that he was going to do something. Schocked me with the shock shield and chocked me with the spit mask while I was restrained in the chair." He also alleges that Defendant Inglish shocked him with a taser while he was restrained; that Defendant Massey, "the camera man[,] purposefully manipulated the camera to shield planned assault" and gave false statements to cover up; and that Defendant Sanders,

Neely, Conner, Alexander, "all aided by physically holding me down while I was being assaulted . . . [,] failed to intervene and provided false information . . . ."

Plaintiff alleges that Defendant Combs falsified emergency operations reports "in an attempt to cover up staff conduct and . . . lied on record at the hearing."

Plaintiff alleges that Defendant Thomas "signed off" on false reports; Defendant Beavers failed to investigate Plaintiff's claims properly; Defendant Ford "signed off on me being stripped out with [Defendant] Belt based on a false report that [Defendant] Rodriguez produced"; Defendant Grief "failed to act"; and Defendant Rodgers "failed to act when I was in the chair." He also alleges that when he filed grievances and wrote letters related to his being assaulted and having his food tampered he was falsely disciplined.

Plaintiff also alleges that he has completed all disciplinary segregation and has been confined to administrative segregation for over 305 days, which he alleges is an atypical and significant hardship, and that he has been told that he must take the "Transition Program in order to be released from long-termed segregation by Josh Patton and Micah Melton despite his compliance and willingness to keep clear conduct."

Plaintiff further alleges that Defendants White, Ford, Grief, and Thomas "failed to properly train and supervise their staff employees as to their conduct of excessive use of force and assaults upon plaintiff in the violation of his constitutional amendment rights[.]"

Plaintiff attaches various documents to his complaint.

As relief, Plaintiff asks for declaratory and injunctive relief and nominal, compensatory, and punitive damages.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id*. at 327. When determining whether Plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### *A. Claims against KSP and official-capacity claims for damages against KSP employees*

The Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments," *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993), unless Congress has validly abrogated the state's immunity or the state has waived its immunity. *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188,

193-94 (6th Cir. 1991). The Eleventh Amendment, therefore, bars this § 1983 action against KSP.

"This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Consequently, the official-capacity claims for damages against all Defendants are also barred by the Eleventh Amendment. In addition, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, the claims against KSP and the official-capacity claims for damages against all Defendants are barred by the Eleventh Amendment and fail to state a claim upon which relief may be granted.

*B. Excessive-force claims*

The Court will allow to go forward the Eighth Amendment and Section 17 of the Kentucky Constitution[1] excessive-force claims for damages against Defendants Harris, Deboe, Inglish, Sanders, Neely, Massey, Conner, and Alexander in their individual capacities for all relief.

*C. Conditions of confinement regarding food*

The Court will allow to go forward Plaintiff's Eighth Amendment and Kentucky Constitution claims regarding tampering with and denying him food against Defendants Pillion and Inglish in their individual capacities for all relief.

---

[1] Plaintiff's complaint refers to Section 17 of the Kentucky Constitution. That section prohibits "cruel punishment." The legal analysis for Plaintiff's claims under the Eighth Amendment and Section 17 of the Kentucky Constitution is the same. *See Simms v. City of Harrodsburg*, Civil Action No. 06-CV-104-JMH, 2007 WL 2792174, at *5 (E.D. Ky. Sept. 21, 2007) ("[Section 17 of the Kentucky Constitution] is nearly identical in language to the Eighth Amendment of the United States Constitution, and it has been treated very similarly by Kentucky Courts.") (citing *Workman v. Commonwealth*, 429 S.W.2d 374, 376 (Ky. 1968)). As such, the Court's analysis of the Plaintiffs Eighth Amendment claims is equally applicable to the claims arising under Section 17.

### D. Claims regarding falsifying reports

Plaintiff alleges that Defendant Combs falsified emergency operations reports "in an attempt to cover up staff conduct and . . . lied on record at the hearing"; that Defendant Thomas "signed off" on false reports; and that Defendant Ford "signed off on me being stripped out with [Defendant] Belt based on a false report that [Defendant] Rodriguez produced." In referring to a hearing and stating that he has completed his disciplinary segregation but remains on administrative segregation, it appears that Plaintiff was given a hearing on the disciplinary charges and found guilty. He does not allege that he lost good-time credits as a result of the disciplinary charges.

Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See Cromer v. Dominguez,* 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."); *Jones v. McKinney*, No. 97-6424, 1998 WL 940242, at *1 (6th Cir. Dec. 23, 1998) ("McKinney did not violate Jones's constitutional rights, even if the disciplinary report was false, because a prisoner has no constitutionally protected immunity from being wrongly accused."); *see also Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (finding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process."

*Reeves*, 2012 WL 275166, at *2 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). However, Plaintiff's allegations are insufficient to trigger constitutional concerns because freedom from segregation is not a protected liberty interest. *See Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Consequently, Plaintiff's claims regarding falsifying information concerning him will be dismissed for failure to state a claim.

*E. Claim regarding failure to investigate*

Plaintiff alleges that Defendant Beavers failed to investigate Plaintiff's claims properly. However, a claimed constitutional violation must be based upon active unconstitutional behavior. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Because Plaintiff does not allege any specific conduct by Defendant Beavers indicating direct, active participation in the alleged misconduct, his complaint fails to state a plausible claim for relief on this claim. *See Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (holding that where prisoner plaintiff only alleged that a defendant failed to investigate unprofessional conduct, he failed to state a constitutional claim against that defendant). Therefore, the Court will dismiss this claim.

*F. Retaliation*

Plaintiff alleges that his filing grievances and writing letters related to his being assaulted and having his food tampered with was protected conduct, that there was a causal connection between the protected speech and adverse action, *i.e.*, "disciplining him falsely"; and that the retaliation suffered was sufficient to deter a person of ordinary firmness in the exercise of his constitutional rights.

On initial review, the Court will allow Plaintiff's First Amendment retaliation claim for all relief to continue against Defendants Harris, Combs, Thomas, Beavers, Ford, Belt, and Rodriguez in their individual capacities.

### G. Segregation and "Transition Program" Requirement

Plaintiff's claims include being in segregation for over 305 days and being required to take the "Transition Program" before being released from segregation. It appears from the complaint that part of this time in segregation was disciplinary and the remainder was administrative.

The Fourteenth Amendment's Due Process Clause protects against deprivations of life, liberty, or property without due process of law. U.S. Const. Amend. XIV; *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted). "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted).

Confinement in segregation generally does not rise to the level of an atypical and significant hardship implicating a liberty interest under *Sandin* except in extreme circumstances, not present in this case. *See, e.g.*, *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (holding that an inmate's administrative segregation for two and a half years while his participation in a prison riot was being investigated did not amount to an atypical and significant hardship); *Mackey v.*

*Dyke*, 111 F.3d 460, 461, 463 (6th Cir. 1997) (117-day delay in releasing the plaintiff from administrative segregation to the general prison population did not impose an atypical or significant hardship on the plaintiff and thus did not trigger due process concerns); *see also Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *7 (6th Cir. Aug. 23, 2000) (and numerous cases cited therein in support of holding that placement for 14 months in administrative segregation did not impose an atypical or significant hardship on the prisoner); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug. 11, 1999) (holding that 30 days in Security Control, 14 days in Disciplinary Control, and six to eight months in Administrative Control did not constitute an "atypical hardship" under *Sandin*). Thus, Plaintiff's allegation regarding the time he has spent in segregation fails to state a constitutional claim.

Nor does Plaintiff's challenge to the requirement that he take part in a rehabilitative program as a prerequisite to be released from segregation raise a claim of a constitutional dimension. So long as the prisoner's change in freedom does not exceed the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force or otherwise impose an atypical and significant hardship in relation to the ordinary incidents of prison life, "'the state is free to use any procedures it chooses, or no procedures at all.'" *Anderson v. Raemisch*, No. 09-CV-132-SLC, 2009 WL 806588, at *4 (W.D. Wis. Mar. 26, 2009) (finding no due-process violation where prisoner-plaintiff was required to enter a "Transition Phase" program upon release from segregation); *see also Patterson v. Heyns*, No. 2:14-CV-118, 2014 WL 5392057, at *3-4 (W.D. Mich. Oct. 23, 2014) (finding that plaintiff-prisoner's due-process rights were not violated by his forced participation in an incentive program required for prisoners in segregation). These claims will be dismissed.

### H. Failure-to-train claim

Plaintiff alleges that Defendants White, Ford, Grief, and Thomas "failed to properly train and supervise their staff employees as to their conduct of excessive use of force and assaults upon plaintiff in the violation of his constitutional amendment rights[.]"

The Sixth Circuit "has held that § 1983 liability must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id*. (internal quotation marks and citation omitted).

While Plaintiff alleges that Defendants' "policies, practices, and customs . . . are the moving force" behind his injuries and that Defendants actions occurred "at superior's direction," these allegations are conclusory and not supported. Plaintiff does allege, more specifically, that Defendants after being informed of constitutional violations "through a report or appeal, or grievance failed to remedy the wrong," and he attaches copies of letters and grievances that he wrote. However, a prison official cannot be held liable under § 1983 either for denying administrative grievances or for failing to remedy alleged unconstitutional behavior, because such actions are not equivalent to "approv[ing] or knowingly acquiesc[ing] in the unconstitutional conduct," for which supervisors can be liable. *Shehee*, 199 F.3d at 300. This concept holds true even if the supervisors have actual knowledge of the alleged constitutional violation. *Id*. ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'") (citation omitted). Here, Plaintiff's allegations fail to state a claim for failure to train.

*I. Declaratory and injunctive relief*

The Court will allow Plaintiff's official-capacity claims against the individual Defendants to proceed for declaratory and injunctive relief for those claims that have been allowed to go forward, *i.e.*, Eighth Amendment and Kentucky Constitution claims for excessive force against Defendants Harris, Deboe, Inglish, Sanders, Neely, Massey, Conner, and Alexander; Eighth Amendment and Kentucky Constitution claims for food tampering against Defendants Pillion and Inglish; and First Amendment claims against Defendants Harris, Combs, Thomas, Beavers, Ford, Belt, and Rodriguez. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) ("Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law[.]").

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that the claims against KSP and the official-capacity claims for damages against all Defendants are **DISMISSED** as barred by the Eleventh Amendment and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

**IT IS FURTHER ORDERED** that the claims regarding falsifying reports, failure to investigate, being in segregation, being required to take part in a rehabilitative program, and failure to train are **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk of Court is **DIRECTED** to terminate KSP, White, Patton, Melton, Grief, and Rodgers as Defendants to this action.

The Court will enter a separate Order Regarding Service and Scheduling Order to govern the development of the continuing claims.

Date: October 24, 2018

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.009